Sue Ellen Tatter
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
550 W. Seventh Avenue, Suite 1600
Anchorage, Alaska 99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>WILLIAM ROY HAMMOCK,<br>Defendant. | Case No. 1:05-cr-0007-RRB<br><br>**DEFENSE SENTENCING MEMORANDUM** |

## I. INTRODUCTION

The defendant, WILLIAM ROY HAMMOCK, a 31 year old Sitka Native man with serious intellectual and learning disabilities, pled guilty to being a user of marijuana, a controlled substance, while possessing firearms. This crime, according to the guidelines, carries a significantly lower offense level than felon-in-possession. When Sitka police seized the guns, Mr. Hammock had no felony conviction.

The court released Mr. Hammock to the custody of a third party, including ankle monitoring and drug testing. He has been totally sober and drug-free since his release in October 2005. He has made all probation and court appointments. He has

been seen by doctors and a psychologist, Ronald Ohlson, Ph.D. Dr. Ohlson's report has been filed with the court. It shows that, for intellectual capacity, Mr. Hammock is in the lowest 15 percent of the population. The report also chronicles Mr. Hammock's problematic childhood, his extreme vulnerability in prison, his amenability to treatment, and his passivity, or lack of dangerousness. Further, the letters attached as Exhibit A indicate that many friends and family members feel that Mr. Hammock is a good, moral person who can improve in the future with guidance and achieve a drug-free life.

The parties engaged in lengthy negotiations, but did not sign a plea agreement. However, the parties have clearly discussed the parameters of the sentence that Mr. Hammock could expect if he pled guilty. Attorneys for the government stated they intended to seek a sentence of 3 to 4 years. Mr. Hammock understood that the expected exposure at sentencing would be between 3 and 4 years. The parties, after review of the pre-sentence report and the guidelines issues, continue to abide by the parameters understood by Mr. Hammock at the time he entered his guilty plea.

## II. GUIDELINE DISPUTES

The defense believes that the base offense level is **14.** Although Mr. Hammock is a "prohibited person" because of marijuana use while he possessed guns, he had no felony conviction for violence or drug trafficking. His single C felony conviction for weapons misconduct was set aside by the state superior court because Mr. Hammock successfully completed the terms of his suspended imposition of sentence. Therefore, this

"set aside" conviction cannot be used to enhance his offense level. United States v. Palmer, 183 F.3d 1014, 1017-18 (9th Cir. 1999); 18 U.S.C. § 921(a)(20).

The offense level should be enhanced for the number of guns (**+6**), but not also **+4** for use of a gun in another felony. The defense denies that Mr. Hammock used a gun in a drug deal, and denies the fact of the gun use described in ¶ 35 of the PSR. Only the informant claims to have seen a gun. No indication of gun use arises from the contemporaneous tape or from police observations. Therefore, without credible testimony from the informant at sentencing, the **4** level enhancement for a "special offense characteristic" should not be applied.

The total offense level should be **20** minus three for acceptance of responsibility, or **17**, for a total guideline exposure, in Category **III**, of **30-37 months.** These parameters are at the low end of the basic concept discussed with the government and Mr. Hammock prior to the plea. This is a reasonable range, particularly considering that Mr. Hammock is facing state consecutive time for drug charges connected temporally to this case.

## III. EVIDENCE OF MITIGATION

There are significant factors suggesting that the court should mitigate the guideline level under 18 U.S.C. § 3553(a). Ron Ohlson, Ph.D., a psychologist, has seen Mr. Hammock several times. He also interviewed Mr. Hammock and family members after writing the report for the court. Dr. Ohlson notes at least four important mitigating factors, and counsel suggests a fifth factor:

1. **Significant Mental Impairment.** The report puts Mr. Hammock in the lowest 15 percent of intellectual capacity in the adult population. Although he has some spacial and mechanical abilities, he has almost no verbal understanding and is severely developmentally disabled.

2. **Lack of Youthful Guidance.** The report truthfully chronicles an amazingly poor childhood, with a 16-year-old substance-abusing mother, virtually no school attendance, and a grandmother-custodian who encouraged Mr. Hammock to use marijuana at eleven years old. Mr. Hammock has court problems today not because he is immoral or anti-social, but rather because his upbringing was deficient.

3. **Extreme Vulnerability in Prison.** The report describes a childhood rape and Mr. Hammock's extreme likelihood of being an assault victim in prison. In fact, undersigned counsel witnessed him, at Lemon Creek, with severe facial bruises from an assault which he was too frightened to report. The longer the jail sentence, the more likely that Mr. Hammock will be classified to a rougher facility, and the more likely he will be victimized.

4. **Amenability to Treatment.** Most importantly, the draft report describes Mr. Hammock's psychological situation as different from the usual anti-social conduct disorders common to defendants in the criminal system. Mr. Hammock is not anti-social, but rather impaired by drug use and learning disabilities, which can be remedied. As Dr. Ohlson will testify, Mr. Hammock

does not show the markers of anti-social personalities. For example, he gets along well with people close to him, is genuinely empathetic, and can express grief and remorse.

5. **Exemplary Performance on Release.** Mr. Hammock has been living at his brother's home, drug-free, since October 28, 2005, almost five months. He has cooperated with pretrial services, made all his court, counsel, and psychological appointments, and had no substance abuse problems. He also cooperated with the people in his brother's home, contributed to chores, and got along well, even though he is a shy, private person. His ability to obey the dictates of the release plan – which included curfews, monitoring, urinalysis, and mandatory meetings – shows that he is a good candidate for more supervised release and less jail.

## IV. CONCLUSION

Mr. Hammock, a person of limited intellectual abilities, pled guilty under an understanding that both counsel agreed on approximately 3 to 4 years as the guideline range. In addition, there are significant factors of mitigation here which the court should consider under 18 U.S.C. § 3553(a).

DATED this 16th day of March, 2006.

Respectfully submitted,

s/Sue Ellen Tatter
Assistant Federal Defender
Alaska Bar No.7605057
550 West 7th Avenue, Suite 1600
Anchorage, AK 99501
Phone: 907-646-3400
Fax: 907-646-3480
E-Mail: sue_ellen_tatter@fd.org

Certification:

I certify that on March 16, 2006,
a copy of the foregoing document, with
attachments, was served electronically on:

David Nesbett, Esq.

and a copy was hand delivered to:

Scott Kelley, Probation Officer
U.S. Probation & Pretrial Services
222 West 7th Avenue, No. 48, Room 168
Anchorage, AK 99513-7562

s/Sue Ellen Tatter